Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9101 | **DATE** | 9/19/2003 |
| **CASE TITLE** | MILTON WILLIAMS vs. THE THRESHOLD, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [21] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 2 2003 date docketed | 38 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/19/2003 | |
| | | 03 SEP 19 AM 9:55 | date mailed notice | |
| CB | courtroom deputy's initials | Date/time received in central Clerk's Office | PW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MILTON WILLIAMS, | ) | |
| Plaintiff, | ) ) ) | No. 02 C 9101 |
| v. | ) ) | Suzanne B. Conlon, Judge |
| THE THRESHOLDS, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Milton Williams sues The Thresholds, Inc. for violation of Title VII of the Civil Rights Act of 1964, as amended in 1991 (Title VII), 42 U.S.C. § 2000, *et seq.*, 42 U.S.C. § 1981, and the Americans with Disability Act (ADA), 42 U.S.C. § 12112 *et seq*. Specifically, Williams claims that Thresholds discriminated against him on the basis of his disability and his race. Thresholds moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

All facts are undisputed unless otherwise noted. Thresholds is a non-profit corporation that provides services to the mentally ill. Williams, an African-American, was hired by Thresholds as a house manager in March 1990. (Pl.'s Facts in Resp. at ¶¶ 6-7.) As a house manager, he lived on-site at a Thresholds home, helping residents develop independent living skills. (Def.'s Facts at ¶ 8.) By all accounts, Williams was a dedicated employee with an excellent attendance record. (Pl.'s Facts at ¶ 1.)

In January 2001, Williams was compelled to seek medical treatment. (Pl.'s Facts at ¶ 2.) In April 2001, he was diagnosed with sarcoidosis, a chronic, multi-system disorder of unknown cause.

1

38

As a result of sarcoidosis, he lost weight, felt fatigued and suffered psychological stress. *Id.* To treat the illness, Williams' physician, Dr. Peoples, advised Williams to take prednisone. (Pl.'s Facts at ¶¶ 7, 13-14.) Williams declined prednisone treatment until December 10, 2001. (Def.'s Facts at ¶ 113.)

In May 2001, Williams went to his supervisor, Ingrid Knox, and requested a medical leave of absence pursuant to the Family Marriage and Leave Act (FMLA). 29 U.S.C. § 2601 *et seq.* (Pl.'s Facts ¶ 11.) In pursuing his request for leave, Williams also spoke with Dana Poindexter, the Benefits Assistant in Thresholds' Human Resources Department. (Def.'s Facts at ¶¶ 40-42.) Williams contacted Dr. Peoples to certify his request for medical leave. Dr. Peoples determined that Williams was unable to work because his illness and refusal of conventional therapy caused his anxiety, fatigue and weight loss. (Peoples' Tr. at 41, 43-44.) Dr. Peoples certified that Williams would be incapacitated from July 11, 2001 through November 11, 2001. (Peoples' Tr. at 40-43.) Thresholds accepted Dr. Peoples' diagnosis and granted Williams' request for leave beginning July 11, 2001, with an expected return date of November 11, 2001. (Pl.'s Facts at ¶ 11.) His return was subsequently extended to November 14, 2001 to exhaust all accrued sick leave.[1] (Booker Knox Tr. at 12-14.)

Williams attempted to extend his leave by an additional two weeks to November 26 or 27, 2001. (Pl.'s Facts at ¶11.) Williams asserts that in October 2001, he contacted Knox to extend his

---

[1] According to Thresholds' leave policy, Williams was entitled to 12 weeks of FMLA leave. Williams' FMLA leave ended on October 3, 2001. After FMLA leave time has been exhausted, a Thresholds employee may use accrued sick time and vacation time to continue paid leave. Williams had accrued enough sick leave to extend his paid leave through November 14, 2001. He had also accrued 44 days of vacation time, which was paid in a lump sum on May 28, 2002, when Thresholds realized that it had erroneously placed Williams on unpaid leave before exhausting his vacation time. Only FMLA leave entitles an employee to reclaim his position.

2

leave and that Knox granted this request. (Pl.'s Facts at ¶ 11.) Knox asserts that she did not have an understanding from her conversations with Williams that he had requested an extension of his leave. (Knox Tr. at 43-44; 47-48; 51-52.)

In October, Williams also spoke with Poindexter. (Def's Facts at ¶ 70.) It is unrefuted that Poindexter believed Thresholds' FMLA leave policy did not require Thresholds to guarantee an employee his position once he had exhausted his FMLA leave. (Def.'s Facts at ¶ 76.) According to Poindexter, Williams suggested that it was likely his illness would prevent him from returning to Thresholds in the near future and that he would be applying for long term disability. (Def.'s Facts at ¶¶ 71-72; Poindexter Aff. at ¶ 12.) To that end, Poindexter planned to hold Williams' position as house manager open until November 14, 2001--the conclusion of Williams' leave--but also prepared to open the position up once his FMLA leave of absence ended. (Def.'s Facts at ¶¶ 80-83.) She was not informed of Williams' request to extend his leave through November 26 or 27, 2001. (Poindexter Aff. at ¶ 12.)

Poindexter began preparations for Williams' departure from the company. (Poindexter Aff. at ¶¶ 14-19.) Thresholds' FMLA policy required that an employee's position be held open through the duration of the employee's FMLA leave, but after that period of time, an employee's right to return to a position ended. (Pl.'s Facts at ¶ 5; Hagen Aff. at ¶ 4; Hagen Aff. Ex. 1.) Poindexter prepared disability documentation and commenced final payroll processing to cash out Williams' accrued vacation time. (Poindexter Aff. at ¶¶ 16-17; Pl's Facts at ¶¶ 16-18.) Poindexter directed Noel Robinson, the program director at Thresholds South, to complete a status change form showing the end of Williams' employment effective November 14, 2001. (Def.'s Facts at ¶ 83.) Robinson completed the forms, noting that Williams had "resigned." (Pl.'s Facts at ¶¶ 16-18.) Poindexter sent

3

Williams a letter on November 2, 2001, advising him that his leave of absence ended on November 14th and that his employment with Thresholds would also end on that date. (Pl.'s Facts ¶ 17.) Williams still had 44 days of accrued vacation time available. (Hagen Aff. at Ex. 5.)

Williams asserts that he did not resign. (Pl.'s Facts at ¶¶ 15-19.) The court accepts his version of the facts for purposes of summary judgment. On November 12th, Williams drafted a response requesting that his termination be rescinded. He stated that it had "been [his] expressed desire to return to work upon release from [his] doctor's care." (Pl.'s Facts at ¶ 19.) Tracy Hagen, Thresholds' Director of Human Resources, responded on November 19th. (Pl.'s Facts at ¶ 19.) Hagen reinstated Williams to unpaid leave status, effective retroactively to November 14th and ending May 14, 2002. (Pl.'s Facts at ¶ 20; Hagen Aff. at ¶¶ 7-9.) Williams accepted reinstatement but he was unsatisfied with Thresholds' refusal to guarantee his position would be available upon his return. (Pl.'s Facts at ¶ 20.)

On May 28, 2002, Williams was issued a check for 44 days of accrued vacation time. (Hagen Aff. at Ex. 5.) Williams remained on unpaid leave status until he was terminated on July 23, 2002. (Hagen Aff. at ¶¶ 16-20.)

## DISCUSSION

Williams argues that Thresholds discriminated against him under the ADA and Title VII. Specifically, he claims that Thresholds denied him proper sick leave because he is African-American and that he was terminated because of his disability. Thresholds moves for summary judgment, arguing that Williams cannot substantiate his allegation of disparate treatment on the basis of race or disability, that he is not disabled within the meaning of the ADA, that he is not a "qualified

4

individual" for purposes of the ADA, and that he cannot establish a pretextual reason for his alleged adverse treatment.

A movant is entitled to summary judgment when the record, viewed in the light most favorable to the non-moving party, shows there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Dyrek v. Garvey*, 334 F.3d 590, 597-98 (7th Cir. 2003); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). The court considers the record as a whole, taking the nonmovant's evidence as true and drawing all reasonable inferences in the nonmovant's favor. *Gennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001).

Entry of summary judgment against a party is proper when the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Dyrek*, 334 F.3d at 597-98; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

To survive a motion for summary judgment, the nonmovant must do more than merely demonstrate a factual dispute; he must offer evidence sufficient to support a verdict in his favor. *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). This standard is applied with heightened rigor in employment discrimination cases, where issues of intent and credibility dominate. *See Greer v. Bd. of Ed. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Shannon v. Sheahan*, No. 01 C 252, 2003 WL 366584 at *7 (N.D.Ill. Feb. 18, 2003). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986).

5

## II. The Race Claim

Lacking direct evidence of discrimination, Williams must proceed under the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 674-75 (7th Cir. 2003). Under *McDonnell Douglas*, Williams bears the initial burden of establishing a *prima facie* case of discrimination. *See Dyrek*, 334 F.3d at 598. To establish a *prima facie* case, he must show that: (1) he belongs to a protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) his employer treated similarly-situated employees outside his classification more favorably. *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994) (*citing McDonnell Douglas*, 411 U.S. 792). If Williams establishes a *prima facie* case, the burden shifts to Thresholds to articulate a legitimate, non-discriminatory reason for his termination. *Dyrek*, 334 F.3d at 598. If Thresholds meets this requirement, the burden shifts again to Williams to show that Thresholds' proffered reason is a pretext for intentional discrimination. *Id.*

Williams is African-American. Thresholds admits he was a good employee. He asserts Thresholds improperly denied him leave and terminated him at the conclusion of his approved sick leave, and that this treatment was discriminatory. He argues that similarly situated non-black employees were given adequate leave and were allowed to return to their positions. Thresholds contends, however, that Williams cannot establish a *prima facie* claim for discrimination because he has not identified a similarly-situated employee who was treated more favorably. Thresholds further contends that Williams suffered no adverse employment action.

Considering first Thresholds' contention that Williams did not suffer an adverse employment action, this argument was not raised until reply. It is well settled that arguments not raised until the

6

reply brief are waived. *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Ins. Co.*, 2002 WL 1466806 at *6 (N.D.Ill. July 8, 2002). Even if the court considers the argument, it is unavailing. Williams has established that he suffered an adverse employment action when he was terminated on November 14, 2001. Thresholds contends that its subsequent action rescinding Williams' termination and the fact that his termination paperwork was never processed means that Williams suffered no adverse action.

Williams did not resign; his leave was extended through November 26th or 27th.[2] Thresholds sent Williams a letter advising him that he would be terminated on November 14th. Thresholds did not revoke that termination date until at least November 17th. Firing an employee, even for three days, constitutes more than an inconvenience because it affects "the terms, privileges, duration or conditions of employment." *Angara v. Illinois Masonic Medical Center*, No. 96 C 6207, 1997 WL 441319 (N.D.Ill July 30, 1997). Accordingly, Williams has established that he suffered an adverse employment action.

Thresholds further contends that Williams has failed to establish a *prima facie* claim under the *McDonnell Douglas* framework because he has failed to demonstrate that a similarly-situated non-African American employee was treated more favorably. Williams asserts that Sandra Crotts was treated preferably because she was allowed to use all of her paid leave before going on disability.

Under the *McDonnell Douglas* framework, Williams must show that Crotts was "directly comparable to him in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680

---

[2]Thresholds denies that Williams' leave was extended; his supervisor believed that he intended to resign. (Def.'s Facts at ¶¶ 61-62.) For purposes of summary judgment, however, the court accepts Williams' deposition testimony as true. (Pl.'s Facts at ¶ 11.)

(7th Cir. 2002). Williams was a house manager; Crotts was a substitute house manager (Williams' Tr. at 157.) Crotts worked under a different supervisor at Thresholds in Wilpower; Williams worked at Thresholds South. (Crotts Aff. at 1; Williams Tr. at 161.) Crotts was on leave from December 12, 1995 through February 20, 1996. (Crotts Aff. at 1.) She returned to full time employment on March 2, 1996 after being authorized to do so by a physician. (Crotts Aff. at 1.) Thus, Crotts was absent for just over 60 days and returned to work within her initial 12-weeks of FMLA leave.

In *Patterson*, the Seventh Circuit explained that in making a determination whether two employees are similarly situated, the court "must look at all relevant factors." *Patterson*, 281 F.3d at 680. These factors include whether the compared employees were subject to the same standards and dealt with the same supervisor. *Id.* Crotts and Williams worked under different supervisors at different locations during different time frames. More importantly, Williams was on leave for over four months when he was terminated, exceeding the FMLA leave period. The FMLA period entitled an employee to 12 weeks of leave for medical reasons.[3] (Hagen Aff. at Ex. 1.) Crotts returned to work within that time period. Accordingly, she retained her position. Crotts and Williams were not similarly situated.

Accordingly, Williams fails to establish a *prima facie* case of race or disability discrimination under Title VII.

---

[3]Williams contends that Crotts' leave was extended for an indefinite amount of time exceeding 12 weeks, and that this constituted a practice of extending FMLA leave. (Williams Tr. at 161.) The only evidence that Williams points to in support of this proposition is inadmissible hearsay from his own deposition that is contradicted by Crotts' Affidavit. (Crotts Aff. at 1.); *See Galdikas v. Fagan*, 2003 WL 21949180 at *9 (7th Cir. Aug 15, 2003) (opposition to summary judgment cannot rely on inadmissible hearsay testimony); Fed. R. Ev. 801(c).

## II. ADA Claim

The ADA addresses two types of discrimination claims: failure to accommodate and disparate treatment. *Sieburns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-22 (7th Cir. 1997). Williams alleges only that he suffered disparate treatment under the ADA. 42 U.S.C. § 12112(a). To establish a *prima facie* case, he must show that he: (1) is disabled within the meaning of the ADA, (2) is qualified, and (3) he suffered an adverse employment action because of his disability.

Thresholds asserts that Williams is not disabled within the meaning of the ADA. To qualify as disabled, Williams must prove by a preponderance of the evidence that he has a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2). It is disputed whether sarcoidosis, as it affects Williams, falls within the ADA. (Def.'s Facts at ¶¶ 17-30; 118-128.) Neither party cites authority where sarcoidosis alone has been sufficient to bring an individual within ADA protections.[4]

Williams has not identified the class of major life activities that sarcoidosis limits. Thresholds bases its argument that Williams is not disabled on the fact that sarcoidosis can be treated with prednisone. In *Sutton v. United Air Lines*, 527 U.S. 471 (1999), the Supreme Court held that in some instances, a person cannot be considered disabled if his disability can be mitigated by medication or other measures. *See also Nawrot v. CPC Int'l*, 277 F.3d 896, 904 (7th Cir. 2002). Threshold argues that because Williams could have taken prednisone, and that in fact when he later took prednisone he felt much better, he was not disabled for ADA purposes. This misconstrues

---

[4]Williams improperly quotes *Lenoir v. Combines Insurance Co.*, 2002 U.S. Dist. LEXIS 15651 (N.D.Ill August 23, 2002). The quote is not found in the opinion. *Lenoir* does not hold that sarcoidosis constitutes a disability under the ADA. In *Lenoir*, the defendant chose not to argue that point. *Id.* at *24.

9

*Sutton.* 527 U.S. at 471. The *Sutton* court explicitly stated that courts should not engage in counterfactual hypothesizing, guessing whether a course of treatment would have alleviated a plaintiff's disability. While prednisone did reduce Williams' suffering, it is not clear that it would have done so at the time. In this case, sarcoidosis, as a permanent, chronic disease is similar to diabetes. *Nawrot*, 277 F.3d at 905. There, the Seventh Circuit held that a diabetic fell within the ADA, despite the fact that he was able to manage his condition with medication. Williams is able to manage his sarcoidosis, but the chronic condition and treatment results in health risks similar to those discussed in *Nawrot. See id.*

Assuming for purposes of this motion that Williams is disabled under the ADA, that he is qualified and that he suffered an adverse employment action, the burden shifts to Thresholds to show a legitimate, nondiscriminatory reason for his termination. *McDonnell Douglas*, 441 U.S. at 802. Thresholds asserts that Williams was terminated as a result of the neutral application of its FMLA policy. Thresholds' FMLA policy only guarantees that employees may return to their position if they return from leave within 12 weeks. Williams concedes that Thresholds guaranteed his position for 16 weeks, from July 11th through November 14th. Williams did not return with medical clearance within the 12-week period as required by Thresholds' policy, and was thus terminated. Because this reason is facially legitimate, the burden shifts to Williams to prove the stated reason for his termination was pretextual. *Id.* at 804. He must show either that his termination was motivated by a discriminatory reason or that Thresholds' proffered reason is unworthy of credence. *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995). Williams can meet this requirement by pointing to evidence that calls Thresholds' truthfulness into question or other facts that bring Thresholds'

explanation into doubt. *See id.*; *see also Schuster v. Lucent Techs.*, 327 F.3d 569, 578 (7th Cir. 2003).

Williams argues that he was fired while on an approved leave of absence and that Thresholds falsely noted that he resigned, when in fact he had not. He contends these actions are in violation of Thresholds' own policy. Williams also argues that the fact he was placed on unpaid leave when he had vacation time remaining suggests an issue of fact that may give rise to an inference that Thresholds' legitimate reason for termination is unworthy of credence. However, pretext "means a lie, [a] specifically phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). Thresholds' mistake regarding Williams' vacation time is immaterial as to whether Williams' termination was pretextual; the decision to fire Williams was made by Poindexter, who knew that Williams had vacation backpay. Poindexter terminated Williams because his FMLA leave had expired. (Poindexter Aff. at Ex. 3.) Williams has not identified facts that call the sincerity of Poindexter's actions into question. *See Jones v. Union Pacific R. Co.*, 302 F.3d 735, 741-2 (7th Cir. 2002). While Robinson did falsely note that Williams had resigned, this does not suggest that Poindexter's explanation is unworthy of credence.

Williams cites *Huff v. Uarco*, 122 F.3d 374, 380 (7th Cir. 1997), for the proposition that violation of Thresholds' own policy creates an issue of credibility for the jury. *Huff* does not stand for this proposition. In *Huff*, the plaintiff survived summary judgment because there was an issue of fact as to whether the defendant had violated its own policy, not because abrogation of its own policy was sufficient to show pretext. *Id.*

Finally, for the reasons stated in the discussion of the Title VII claim, Williams has failed to show that Crotts was similarly situated. Accordingly, Williams' ADA claims cannot withstand summary judgment.

## CONCLUSION

Williams has failed to carry his *prima facie* burden to establish discriminatory treatment under Title VII. He has also failed to show that Thresholds' proffered reason for his termination was motivated by discrimination or is unworthy of credence. Thresholds' motion for summary judgment on both claims is granted.

September 19, 2003                          ENTER:

                                                    Suzanne B. Conlon
                                                    United States District Judge